# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1329V

| | |
|---|---|
| MARCUS HOWARD,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: August 5, 2024 |

*Jessica Ann Wallace, Siri & Glimstad, LLP, Aventura, FL*, for Petitioner.

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC*, for Respondent.

### DECISION (A) DENYING MOTION FOR ATTORNEY'S FEES AND COSTS, AND (B) DISMISSING PETITION[1]

On September 19, 2022, Marcus Howard filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from a tetanus diphtheria acellular pertussis ("Tdap") vaccine received on September 20, 2019. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

The case was activated on February 23, 2023 (ECF No. 16). On December 11, 2023, Respondent filed his Rule 4(c) Report and a motion to dismiss (ECF Nos. 28, 29).

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent argued that Petitioner had failed to establish by preponderant evidence that he suffered the residual effects of his injury for more than six months, as required by the Vaccine Act. Respondent's Report at *9. Instead, the record revealed Petitioner was treated for a brief period of time well short of the severity cut-off, and then delayed addressing the shoulder issues for several years thereafter. *Id.* at *9-10.

Petitioner was directed to respond to Respondent's dismissal motion by February 12, 2024. Scheduling Order (NON PDF), issued Dec. 11, 2023. Petitioner twice sought, and received, additional time to respond (ECF Nos. 30, 31). Then, on April 18, 2024, Petitioner's counsel filed a motion to withdraw from the matter, along with the present motion for interim attorney's fees and costs, and a statement of Petitioner's personal costs (ECF Nos. 32-34). On April 30, 2024, Respondent responded to the motion for interim fees and costs (ECF No. 35). The matter is now ripe for resolution.

## I. Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in some unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S. Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3]

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-

Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("*Cottingham I*"). The reasonable basis requirement looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Human Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Human Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022), *aff'd without op., slip op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis may exist when a claim is filed but cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Human Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

---

0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

3

## II.  Review of Submitted Evidence

Petitioner received the Tdap vaccine alleged as causal in his left deltoid on September 20, 2019. Ex. 2 at 22-23.[4] The Tdap was given due to concerns about body fluid exposure after Petitioner was stuck with a needle with an unknown substance in the syringe while working on a car. *Id.* at 10.

Ten days later (September 30, 2019), Petitioner saw Dr. Gavin Gordon at the Everett Clinic. Ex. 4 at 2. Petitioner reported that at work on September 19, 2019, he reached under the seat of a car and was stuck by a needle. *Id.* The next day he was given a Tdap vaccine high on his left shoulder. *Id.* Petitioner told Dr. Gordon he was having significant pain and loss of motion in his left shoulder from the Tdap vaccination. *Id.* On examination, his left shoulder range of motion was limited to 90 degrees in flexion and abduction. *Id.* at 3. Petitioner was assessed with rotator cuff tendonitis and acute bursitis of the left shoulder, given oxycodone-acetaminophen, and referred to occupational medicine. *Id.*

Petitioner returned to Dr. Gordon a week later (October 7, 2019). Ex. 4 at 4. His left shoulder pain was worsening. *Id.* at 5. He was given a cortisone injection in the subacromial space, which provided partial pain relief. *Id.* at 6.

Petitioner saw Dr. Gordon again on October 14, 2019, reporting that the cortisone had helped for two and a half days, but his pain had now returned to its previous levels. Ex. 4 at 7. An ultrasound showed that his rotator cuff was intact, with no calcific tendonitis, fluid collections, or partial tears, although a hyperechoic signal was documented. *Id.* at 8. He was given amitriptyline for chronic pain and instructed to follow up with occupational medicine and work on range of motion to avoid a frozen shoulder. *Id.* at 9.

The following week (on October 21, 2019), Petitioner returned to Dr. Gordon, complaining that his left arm injury remained painful and was interrupting his sleep. Ex. 4 at 10. He was "getting a little more used to it" and sleeping a little better. *Id.* On examination, he had pain with flexion and abduction past 60 degrees. *Id.* at 11. Dr. Gordon prescribed amitriptyline and indomethacin. *Id.*

The next day, October 22, 2019, Petitioner saw Dr. Christopher Hardy. Ex. 4 at 12. Petitioner continued to have persistent left shoulder pain with movement of his arm away from his body and overhead reaching. *Id.* On examination, he was tender to palpation in his lateral deltoid and subacromial area. *Id.* at 14. He had positive Neer and Speeds impingement signs, as well as reduced range of motion. *Id.* He was assessed with capsulitis vs tendinitis, secondary to SIRVA. *Id.* at 15. Dr. Hardy recommended physical therapy ("PT") and surveillance. *Id.*

---

[4] Because most pages in Exhibits 2, 4, 5, and 6 are not paginated, the page number references in this decision refer to the page numbers added by CM/ECF to the PDF headers.

The following day (October 23, 2019), Petitioner underwent a PT evaluation for left shoulder pain. Ex. 6 at 3. He stated he received a Tdap vaccine after a needlestick injury at work, and the Tdap vaccine was given too high on his shoulder, resulting in significant pain. *Id.* He rated his pain between three and nine out of ten. *Id.* He was assessed with adhesive capsulitis. *Id.* at 4. PT exercises were not done that day. *Id.* A plan was established for Petitioner to attend PT twice a week for six weeks. *Id.* at 5. However, the record does not include any further PT records.

On February 14, 2020, Petitioner saw nurse practitioner ("NP") Christine Hendrickson at the Everett Clinic for fatigue with a low grade fever. Ex. 5 at 19. On examination, his extremities were normal, with no cyanosis or edema. *Id.* at 21. He was assessed with cough, fever, and an upper respiratory infection. *Id.* The record does not document any left arm or shoulder problems.

On February 19, 2020, Petitioner saw a different NP at the Everett Clinic requesting a note to clear him to return to work. Ex. 5 at 27. He had gotten worse over the weekend, but was now improved. *Id.* A note was provided. *Id.* at 28. The record is silent on any concerns with his left arm or shoulder.

Petitioner returned to the Everett Clinic on May 20, 2020 (now more than six months from the September 2019 vaccination) for right knee pain. Ex. 5 at 25. A musculoskeletal examination documented only problems with his right knee, and was silent on his left arm and shoulder. *Id.* at 31. He was assessed with patellar bursitis of his right knee, and given naproxen and prednisone. *Id.* There is no mention of his left arm or shoulder.

Petitioner saw Dr. Arnold Heng at the Everett Clinic on May 26, 2020 for right knee pain as well as abdominal upset and headache. Ex. 5 at 37. His right knee examination revealed mild to moderate edema and tenderness to his right patella. *Id.* at 39. He was assessed with right anterior knee pain and prescribed nabumetone. *Id.* at 40. The record does not mention his left arm or shoulder.

Petitioner returned to the Everett Clinic for right knee pain on June 1, 2020. Ex. 5 at 48. He was assessed with infrapatellar bursitis of the right knee, and referred to an orthopedist. *Id.* at 51. The record is silent on concerns with his left arm or shoulder.

Petitioner saw Dr. Jared Anderson on June 9, 2020 for right knee pain. Ex. 5 at 53. A detailed examination of his right knee was done, but the record does not indicate that his left shoulder was examined or discussed. *Id.* at 55. He was assessed with patellar tendonitis and given exercises to do. *Id.* at 56.

The record indicates that Petitioner was a "no show" on July 21 and August 7, 2020, with no indication of the reason for the appointments. Ex. 5 at 57-58. The next medical record is from over two years later – nearly *three years* after he received the Tdap vaccine alleged as causal, and three days before filing the petition in this case –

5

when Petitioner returned to the Everett Clinic on September 16, 2022 complaining of left shoulder pain. *Id.* at 58. Petitioner reported that he had an injury to his shoulder "a few years ago," with intermittent pain since his injury that had worsened in the past week. *Id.* at 59. His symptoms were mild, but worse in the afternoon. *Id.* On examination, his left shoulder had no gross deformity. *Id.* at 60. His acromioclavicular joint, greater tuberosity, and bicipital groove were nontender, and he had active shoulder elevation to 90 degrees. *Id.* He was assessed with left shoulder pain and *right* rotator cuff tendinosis.[5] *Id.* at 60-61. He was given amitriptyline and recommended to continue shoulder exercises. *Id.* at 61.

Petitioner filed an affidavit in support of his claim. Ex. 1. Petitioner states that he felt immediate pain when he received the Tdap vaccine, which was administered higher than he recalls with previous vaccines. *Id.* at ¶ 4. He opened a worker's compensation case after his on the job injury being stuck with a hypodermic needle, and the worker's compensation carrier agreed to pay for his medical treatment. *Id.* at ¶ 5.

Petitioner states that after an October 23, 2019 appointment with Dr. Gordon, he began PT, and received PT treatment "[o]ver the course of the next month." Ex. 1 at ¶¶ 10-11.[6] He adds that he had one more follow up with Dr. Gordon on November 20, 2019.[7] *Id.* at ¶ 11. However, the worker's compensation carrier stopped paying his medical expenses after only a few PT visits, having determined that his injury was unrelated to his work injury. *Id.* He did not have health insurance and was unable to afford continued treatment, and thus learned to live with the pain. *Id.* His pain gradually improved, though he continued to experience some pain and loss of mobility. *Id.*

Petitioner again sought care on September 16, 2022 because his shoulder was still bothering him. Ex. 1 at ¶ 12. He asserts that his shoulder injury "has lasted for more than 6 months and I continue to suffer from this vaccine-related injury." *Id.* at ¶ 13.

### III.   Reasonable Basis and Severity Analysis

Petitioner received the Tdap at issue in this case on September 20, 2019. Thus, to satisfy the statutory severity requirement, he would need to demonstrate that his symptoms continued until *at least* through late March 2020.

The record does support the existence of a SIRVA-like presentation, close in time to vaccination. Petitioner sought care promptly and treated his shoulder pain intensively for one month, attending five medical appointments in less than a month followed by a

---

[5] The record does not indicate that Petitioner reported any problems with his right shoulder. Thus, the reference to *right* – rather than *left* – rotator cuff tendonitis likely is a typo.

[6] The record contains only one PT visit on October 23, 2019.

[7] The record does not contain documentation of this appointment.

PT evaluation on October 23, 2019 – just over a month after his September 20, 2019 Tdap vaccination.

After that, however, Petitioner did not seek care for his left shoulder until nearly *three years* later. In the interim – and, importantly, spanning the relevant six month time period – Petitioner sought care for other conditions *six* times, without ever mentioning any concerns about his left shoulder. Such a record greatly undermines any contention that Petitioner's shoulder-related concerns persisted through this period.

The only evidence suggesting that Petitioner *may* have experienced residual effects of his left shoulder injury through late March 2020 are conclusory statements in his affidavit, plus a single medical record three years after his injury. However, these records are insufficient to outweigh the aforementioned evidence. Petitioner's affidavit does not address why he did not mention shoulder pain at any of his six appointments between February and June 2020, or provide any details on how his injury affected his ability to engage in usual activities. His affidavit also does not address specifically whether he experienced residual effects during the relevant time period or, if so, how he was able to recall such specifics two and a half years later.[8]

Respondent asserted that this case is similar to *Black v. Sec'y of Health & Human Servs.*, No. 21-09V, 2023 WL 4446500 (Fed. Cl. Spec. Mstr. May 22, 2023) (finding severity requirement not met where Petitioner treated for only three months, followed by seventeen month gap in treatment). Respondent's Report at *10-12. Respondent argued that compared to *Black*, the present case involves a shorter initial treatment period (one month versus three months) and a much longer treatment gap (35 months versus 17 months) – making dismissal even more appropriate in this case. *Id*. The only evidence that would support a finding that the statutory severity requirement is satisfied is Petitioner's affidavit, and that a special master cannot make findings based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion. *Id*. at *12 (*citing* Vaccine Act § 13(a)(1)).

Although Petitioner's affidavit suggests that he continued PT for a month after his October 2019 evaluation, and saw Dr. Gordon for his shoulder problem one more time on November 20, 2019 (Ex. 1 at ¶ 11), there are not medical records documenting this care. Even if such records had been filed, they would support, at best, a finding that Petitioner's condition lasted for two months – still far short of the statutory requirement.

The medical records thus demonstrate that Petitioner's symptoms continued only for just over *one* month. The evidence does not come close to supporting a finding that Petitioner's condition continued for six months, a threshold requirement to proceed in the

---

[8] Petitioner signed the affidavit on October 19, 2022. Ex. 1 at 4.

Vaccine Program. Accordingly, severity cannot be established – and this finding would apply to *any* form of the claim, Table or causation-in-fact. This case is simply not tenable.

Under such circumstances, I cannot find that the case possessed sufficient reasonable basis to have been filed. The severity deficiencies should have been evident to counsel by review of the medical record – especially since the case was filed three years after the vaccination event. In such circumstances, the Vaccine Act places the risk of filing the claim on counsel, and does not allow an award of fees.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). In this case, Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim.

**Petitioner's motion for interim attorneys' fees and costs is therefore <u>DENIED</u>.** And the matter is DISMISSED for failure to meet the severity requirement. The motion to withdraw as counsel is therefore MOOT.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[9]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.